Filed 7/27/26 P. v. Gordon CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B346337 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24CJPC00966) |
| v. | |
| JOSHUA DECINCES GORDON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kerry L. White, Judge. Affirmed.

Deaven Rector for Defendant and Appellant.

Nathan J. Hochman, District Attorney, Cassandra Thorp and Elizabeth Marks, Deputy District Attorneys, for Plaintiff and Respondent.

_____

Joshua Gordon filed an appeal after the trial court found him disqualified from holding a license to carry a concealed weapon (Pen. Code, § 26206)[1] and denied his motion to reconsider the ruling.  We affirm.

**FACTS AND PROCEDURAL HISTORY**

Appellant was issued a license to carry a concealed weapon on April 11, 2024.

On November 23, 2024, appellant was arrested after the following events, as related in the arrest report:  While at a McDonald's drive-through, appellant got into an argument with the employee taking his order, during which appellant stepped out of his car, and the employee called appellant a "bitch ass [N-word]."  Appellant retrieved his firearm from his car and placed it in his waistband beneath his shirt while he threatened, "I'm going to show you what a real [N-word] is all about."  The manager of the McDonald's told the employee to back away from the drive-through window, and she approached the window herself to show appellant the phone number for the corporate office where he could make a complaint.  Appellant grabbed the manager's cell phone and threatened to keep it if the employee did not come outside.  He was ultimately arrested for grand theft.

Based on the arrest report, the Los Angeles County Sheriff's Department determined appellant had "engaged in an unlawful or reckless use, display, or brandishing of a firearm" (§ 26202, subd. (a)(5)) and revoked his license.

Appellant requested a hearing to challenge the revocation (§ 26206).

The trial court convened the hearing on February 25, 2025.  Appellant's counsel argued that appellant had merely "concealed"

---

[1] Undesignated statutory references are to the Penal Code.

his weapon when he took it out of his car and placed it in his waistband, which was "exactly what he was permitted to do by law." The court called this argument "ridiculous," and found that appellant's conduct of grabbing his gun and placing it on his person during a heated dispute was "reckless." It therefore found him disqualified from holding a license to carry a concealed weapon and informed him that he could apply for the license again in two years.

On March 11, 2025, appellant filed a letter on his own behalf to request that the court reconsider its ruling. The letter explains that appellant "simply noticed [his] car door was open and [his] weapon was in plain sight," so he "figured [he]'d secure it." It adds that appellant is suffering financially due to the loss of his license because he can no longer accept certain jobs as a security guard.

On May 13, 2025, the trial court convened a hearing, at which it heard appellant's arguments, noted the motion was procedurally improper, and declined "to reconsider [its] decision."

On May 20, 2025, appellant filed a notice of appeal, indicating that a "motion was not granted in [his] favor and [he] would like further consideration."

## DISCUSSION

### 1. Appealability and timeliness

A party affected by an order may move the trial court to reconsider the order "based upon new or different facts, circumstances, or law." (Code Civ. Proc., § 1008, subd. (a).) Such a motion must include an "affidavit," explaining, among other things, "what new or different facts, circumstances, or law are claimed to be shown." (*Id*., subd. (b).)

3

"An order denying a motion for reconsideration [under] subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (Code Civ. Proc., § 1008, subd. (g).) The parties do not dispute, and we agree, that the trial court's order is appealable.

The People assert that the appeal is untimely because appellant had only "60 days after the rendition of the judgment or the making of the order" to appeal under rule 8.308(a) of the California Rules of Court. That rule is not applicable, however, because it applies only to criminal appeals. In this matter, appellant's arrest did not result in a criminal conviction but had " 'consequences outside the criminal context.' " (*In re Grayden N.* (1997) 55 Cal.App.4th 598, 604–605 [noting that a driver's license suspension is not a penal sanction, but a measure to protect the public from people who cannot be trusted with a license to drive].)

Relevant here is rule 8.104(a)(1), under which "a notice of appeal must be filed on or before the earliest of" "(A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, showing the date either was served," "(B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, accompanied by proof of service," or "(C) 180 days after entry of judgment." The 60-day limit does not apply because neither the court clerk nor the People served the kind of notice required to trigger it. The clerk mailed the parties a copy of the minute order, but that did not commence the 60-day period because it

4

was neither file-endorsed nor entitled "Notice of Entry." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 903; *Huff v. Interior Specialists, Inc.* (2024) 107 Cal.App.5th 970, 979; *Hughey v. City of Hayward* (1994) 24 Cal.App.4th 206, 210.) Thus, the operative appeal period is 180 days after the entry of the order on February 25, 2025. Appellant filed his appeal on May 20, 2025, which was well within this period.

## 2. Governing law

State law generally prohibits carrying a concealed firearm in public (§ 25400), but there is an exemption for those who hold a license (§ 25655). The local licensing authority—in this case the sheriff's department—"shall" revoke a license to carry a concealed weapon "if at any time [it] determines" that the licensee "has become a disqualified person" as set forth in section 26202. (§ 26195, subd. (b)(1)(C).) "Unless a court makes a contrary determination pursuant to Section 26206," an applicant who "[h]as engaged in an unlawful or reckless use, display, or brandishing of a firearm" shall be deemed to be a disqualified person. (§ 26202, subd. (a) & (a)(5).)

When the sheriff revokes a license, it must issue a notice stating the reasons and informing the disqualified person that they may request a hearing for the court to review the revocation. (§ 26202, subd. (a).) At the hearing, "[t]he People shall bear the burden of showing by a preponderance of the evidence that the applicant is a disqualified person in accordance with Section 26202." (§ 26206, subd. (e).) If the court finds the People have met their burden, it "shall inform the person of their right to file a subsequent application for a license no sooner than two years from the date of the hearing." (*Id.*, subd. (g).)

5

We review the trial court's determination for substantial evidence (*Benetatos v. City of Los Angeles* (2015) 235 Cal.App.4th 1270, 1281), but review issues of law de novo (*Young v. California Fish and Game Commission* (2018) 24 Cal.App.5th 1178, 1192).

## 3. The trial court did not commit legal error

We reject appellant's argument that the court "ignored the statutory requirement that a firearm be displayed in a 'rude, angry, or threatening manner' " (§ 417, subd. (a)(2)) for the simple reason that section 417 was not at issue in this proceeding.

## 4. Substantial evidence supports the finding of recklessness

The information in the arrest report—that appellant grabbed his gun and placed it in his waistband during a heated dispute at a McDonald's drive-through—provides an ample basis for the finding that appellant recklessly displayed his gun.

In urging us to conclude otherwise, appellant points to his history as an "armed security professional"; argues that he grabbed the gun to secure it and did not point it at anyone; urges that the one eyewitness (the manager) was not "neutral" and thus could not be trusted; and argues that the lack of criminal charges necessarily means the evidence is insufficient. Aside from this last point, for which appellant cites no authority, these arguments ask us to reweigh the evidence and resolve credibility issues. This falls outside our purview in our substantial-evidence review. (*People v. Veamatahau* (2020) 9 Cal.5th 16, 36.)

## 5. Second Amendment

Appellant challenges the constitutionality of his license revocation under the Second Amendment, citing *New York State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. 1 [142 S.Ct. 2111,

6

213 L.Ed.2d 387] (*Bruen*). Because he did not raise this below, we construe it as a facial challenge, requiring us to " 'consider "only the text of the measure itself, not its application to the particular circumstances of an individual." ' " (*People v. Anderson* (2024) 104 Cal.App.5th 577, 583–584 (*Anderson*) [facial challenge may be raised for the first time on appeal]; accord, *People v. Richardson* (2025) 108 Cal.App.5th 1203, 1209.) This "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.' " (*United States v. Rahimi* (2024) 602 U.S. 680, 693 [144 S.Ct. 1889, 219 L.Ed.2d 351] (*Rahimi*).)

In 2022, *Bruen* held "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." (*Bruen*, *supra*, 597 U.S. at p. 10.) It further clarified the test for assessing constitutionality under the Second Amendment: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." (*Id*. at p. 17.) The government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. (*Ibid*.) "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." (*Rahimi*, *supra*, 602 U.S. at p. 692.) *Bruen* held that New York's requirement that a person show "proper cause" to obtain a firearm license was unconstitutional in that it prevented "law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (*Bruen*, at pp. 12, 71.)

7

In 2024, *Rahimi* upheld the constitutionality of a statute that barred individuals from possessing a firearm who were subject to a domestic violence order that included a finding that he or she posed a threat to safety. (*Rahimi*, *supra*, 602 U.S. at pp. 698–699 [distinguishing the regulation struck down in *Bruen*, which applied to the public generally].) The court observed, "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." (*Rahimi*, at p. 693.) Surety laws and "going armed" laws are two examples—the former, "provid[ing] a mechanism for preventing violence before it occurred," and the latter, "a mechanism for punishing those who had menaced others with firearms." (*Id*. at p. 697.) These kinds of laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." (*Id*. at p. 698.)

Appellant does not mention *Rahimi*, let alone discuss its relevance. He merely asserts—without citing authority—that "[t]here is no tradition of revoking a citizen's rights to carry a firearm based on a mere allegation—much less an allegation the prosecuting authority reviewed and rejected." His argument ignores the procedural protections found in section 26206, which entitle an individual to challenge his or her license revocation at a hearing before the superior court, at which "[t]he People shall bear the burden of showing by a preponderance of the evidence that the applicant is a disqualified person in accordance with Section 26202." (§ 26206, subd. (e).) Appellant's revocation is not based on a mere allegation—it is based on the trial court's finding that appellant "engaged in an unlawful or reckless use, display, or brandishing of a firearm" (§ 26202, subd. (a)(5)). (Cf. *Rahimi*,

8

*supra*, 602 U.S. at pp. 698–699 [noting the statute at issue "applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another," which "matches the surety and going armed laws"].)  Sections 26202 and 26206 are plainly consistent with the historic tradition of "prohibit[ing] . . . the possession of firearms by those found by a court to present a threat to others."  (*Id*. at p. 698.)

### DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

RICHARDSON, J.

GOORVITCH, J.

9